

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# USA v. Ramos

Precedential or Non-Precedential: Precedential

Docket No. 05-1169

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Ramos" (2006). *2006 Decisions*. Paper 1190.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1190

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1169
_____

UNITED STATES OF AMERICA,

Appellant

v.

JEFFREY RAMOS; SAMUEL ACOSTA


_____

APPEAL FROM THE DISTRICT COURT OF
THE VIRGIN ISLANDS
(D.C. Nos. 04-cr-00117-1 and 04-cr-00117-2)
District Judge:  The Honorable Raymond L. Finch
_____

ARGUED: DECEMBER 6, 2005

BEFORE: SCIRICA, Chief Judge,
MCKEE and NYGAARD, Circuit Judges.

(Filed: April 5, 2006)
_____

Kirby A. Heller, Esq. (Argued)
United States Department of Justice
Criminal Division, Appellate Section
601 D Street, NW, Room 6206
Washington, DC 20530

Jerry D. Massie, Esq.
United States Department of Justice
Terrorism and Violent Crime Section
601 D Street, NW, Room 6500
Washington, DC 20530

Counsel for Appellant


Jomo Meade, Esq. (Argued)
112 Queen Cross Street
Frederiksted, St. Croix, USVI 00840

Counsel for Appellee Samuel Acosta

Stephen A. Brusch, Esq. (Argued)
International Plaza, Suite 2G
P. O. Box 988
Charlotte Amalie, St. Thomas, USVI 00804

Counsel for Appellee Jeffrey Ramos

---
OPINION OF THE COURT
---

NYGAARD, <u>Circuit</u> <u>Judge</u>.

The United States of America ("government") appeals from the order of the District Court of the Virgin Islands granting defendants Jeffrey Ramos and Samuel Acosta's motion to suppress evidence. Because there was reasonable suspicion justifying the stop, we will reverse.

## I.

Members of the Street Enforcement Team of the Virgin Islands Police Department were patrolling the Castle Coakley area in an unmarked SUV when they observed two vehicles, a van and a Honda Accord, parked next to each other in the parking lot of a night club.[1] Upon passing in-

---

[1] The District Court wrote that the car and van were

(continued...)

3

between the vehicles, one member of the team, Officer Huertas, testified that when he got to within three to four feet of the passenger side of the Honda, he smelled "marijuana smoke" through his open window. He also testified that the Honda's window closest to the officers' car was partially open.

The Enforcement Team then drove past the two vehicles and parked forty or fifty feet away. Soon thereafter the Honda left the parking lot, passing by the Enforcement Team's vehicle as it left. After the Honda passed the Enforcement Team's vehicle the Team decided to make a traffic stop and pulled over the Honda. The officers ordered defendant Acosta out of the driver's side of the car and he exited with his driver's license and registration in hand.

---

[1] (...continued)
parked on the side of the road, but both parties agree that the vehicles were in a parking lot.

4

Defendant Ramos then apparently exited, according to Huertas, "in a hostile manner, shaking, waving his hands," and asking, "what the fuck you all stop me for?" An officer then searched Ramos for weapons and found a magazine clip in his pocket. Then, as Officer Huertas inspected the vehicle for other occupants, he smelled marijuana and saw smoke coming from a small black cup. Additionally, he saw a chrome .357 pistol in the car. After the car was searched, a second pistol was located under the seat as well as two marijuana cigarettes, a measuring scale, and baggies. After the weapons were found, the officers arrested both defendants and administered their *Miranda* rights.

The government charged the defendants on various weapons possession counts. The defendants moved to suppress all physical evidence and statements obtained as a result of the stop. They claimed that the stop violated their

Fourth Amendment rights and, additionally, that any statements made were obtained in violation of their Fifth and Sixth Amendment rights. The government responded that the officers had probable cause to effectuate the stop based alternatively on the fact that the Honda had committed a traffic violation and that the officers had seen smoke and smelled marijuana as they passed the vehicles.

After a hearing, the District Court granted defendants' motion, ruling that the government did not have probable cause to stop the defendants' car.[2] In so doing, the District

---

[2] At the motion hearing the government contended that the officers had probable cause to stop the defendants. The District Court's analysis, therefore, hinged on whether the government was able to show, by a preponderance of the evidence, that it had probable cause to stop Acosta's vehicle. Because it found that the government could not, the District Court found the stop to be in violation of the Fourth Amendment and it applied the exclusionary rule to all the evidence subsequently found and seized.

Court found that there was no articulable suspicion of a traffic violation and that the marijuana smell was neither articulable nor particularized to the Honda such that it established, by a preponderance of the evidence, probable cause. The government timely filed a notice of appeal.[3]

At the hearing, the government unsuccessfully contended that the defendants' traffic violation established probable cause to execute the stop and subsequent searches. On appeal, the government does not challenge the District Court's probable cause analysis. Rather, they contend that even if there was no probable cause, there existed reasonable

---

[3.] We have jurisdiction pursuant to 28 U.S.C. § 1291. We have plenary review over the District Court's determination of the validity of the officer's search. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Valentine*, 232 F.3d 350 (3d Cir. 2000). We review the District Court's findings of fact for clear error. *Ornelas*, 517 U.S. at 698.

suspicion and therefore the stop was justified under *Terry v.*

*Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889 (1968).[4]

According to the government, once Officer Huertas

and the other officers detected the marijuana odor, they had

reasonable suspicion to effectuate the stop of defendants' car.

Defendants argue in response that the marijuana odor was not

particularized to their car and that, therefore, reasonable

suspicion could not exist. Because we conclude that the

---

[4.] We express a certain amount of discomfort with the government's case at trial and their corresponding attempts to establish probable cause, especially in light of the District Court's finding that portions of Officer Huertas' (the government's star witness) testimony were "unsupportive" and the presence of conflicting justifications for the stop. Nevertheless, "[t]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action so long as the circumstances, viewed objectively, justify that action." *United States v. Johnson*, 63 F.3d 242, 246 (3d Cir. 1995) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). Our inquiry, therefore, is justifiably centered on the objective existence of reasonable suspicion.

officers had reasonable suspicion to effectuate the stop, we will reverse.

## II.

The Fourth Amendment prevents "unreasonable searches and seizures." *U.S. Const. Amend. IV*. A seizure is usually reasonable when it is carried out with a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 356-357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches are presumptively unreasonable. *See id*. As an exception to this rule, a police officer may conduct a brief, investigatory search consistent with the Fourth Amendment without a warrant under the "narrowly drawn authority" established for a *Terry* stop. *Terry*, 392 U.S. at 27. Such warrantless searches are appropriate where an officer possesses reasonable, articulable suspicion that criminal

9

activity is afoot. *Id*; *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.E.2d. 570 (2000).

Reasonable suspicion "is a less demanding standard than probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Thus, because probable cause means "a fair probability that contraband or evidence of a crime will be found," the level of suspicion necessary to justify a *Terry* stop is somewhat lower and can be established with information that is different in quantity or content than that required for probable cause. *Id*; *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, the officer must demonstrate that the stop was based on something more than an "inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 27). A police officer, therefore,

may only effectuate a *Terry* stop where "specific and articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity." *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002) (quoting *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998)). Consequently, we accord deference to an officer's judgment of whether criminal activity is taking place with an understanding that "whether an officer has reasonable suspicion to warrant a stop . . . is often an imprecise judgment." *Id.*

It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause. *See United States v. Humphries*, 372 F.3d 653, 658 (4th Cir.2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *United States v.*

11

*Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000). Recognizing this, defendants concede that, had an officer smelled marijuana coming directly from their car, not only reasonable suspicion, but probable cause would have been established, justifying the stop. Instead, defendants argue that Officer Huertas testified, and the District Court found, that the marijuana smell could not be specifically pinpointed to their car and that because the marijuana smell was not appropriately particularized, it cannot establish reasonable suspicion.[5] We disagree.

_____

5. It is true that the District Court concluded that "the government did not preponderate that the smell of marijuana came from the defendants and their key witness, Officer Huertas, testified that he could not identify which vehicle the smell of marijuana was coming from." Consequently, if our inquiry were whether probable cause existed, we might be inclined to agree with the District Court that the stop was not justified. However, we only must determine whether, under these circumstances, reasonable suspicion justified the stop; therefore, the government need not establish by a

(continued...)

12

The question of what constitutes "particularized" for the purposes of a reasonable suspicion inquiry does not reduce to a rigid definition precisely because reasonable suspicion is itself a flexible standard. *See White*, 496 U.S. at 330. In the abstract, the defendants may be correct that, at some point, a broadly diffuse and undistinguished marijuana odor will not automatically provide the necessary particularity to establish reasonable suspicion. For instance, had the officers smelled marijuana odor in a crowded bar, they would not be justified to pat down every patron on the claim of some individualized reasonable suspicion. *See Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). But defendants' claim that reasonable suspicion requires the same level of particularity as probable cause is misguided. *See*

5. (...continued)
preponderance of the evidence (as the District Court inquired) that the marijuana smell came from the defendants' car.

13

*United States v. French*, 974 F.2d 687, 692 (6th Cir. 1992) (holding that reasonable suspicion existed to stop defendants who had been riding in tandem with a truck that possessed a marijuana odor).

To establish reasonable suspicion, the particularity requirement need not be as stringent as it might be for probable cause.[6] Thus, while probable cause may require the odor to be particularized to a specific person or place, in this case we are satisfied that the totality of the circumstances sufficiently particularized the odor to justify a *Terry* stop of the defendants' car.

---

[6] As defendants point out, courts that have addressed the particularity requirement in the context of marijuana odor have established that the odor should be particularized to some specific person or place. However, these cases all addressed the particularity requirement in the context of a probable cause inquiry. *See Humphries*, 372 F.3d at 659; *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 2004).

14

Here, it is undisputed that the officers drove in-between the two vehicles that were parked next to each other. As the officers drove by, coming to within three or four feet of defendants' car, they smelled an identifiable marijuana odor. Officer Huertas also testified that the both the defendants' car window (facing the officers' SUV) and the officers' own window were open. While it is true that no officer testified directly as to *which* car the odor had come from, relying on their skill and experience, it would have been reasonable for the officers to conclude that the odor was coming from one, the other, or both vehicles.[7] For the purposes of reasonable suspicion, that probability establishes the odor as sufficiently particularized.

Concluding, as we do, that it was reasonable for the officers to suspect that the odor was coming from one, or

---

[7] These two vehicles were the only vehicles in the area.

15

both, of the two vehicles, it was likewise reasonable for the officers' to suspect that criminal activity was afoot.[8] Therefore, under *Terry* and its progeny, the officers' had reasonable suspicion and were entitled to investigate further, justifying the stop of defendants' car. We accordingly find the District Court erred in suppressing the evidence.

## III.

For the foregoing reasons, the judgment of the District Court entered on December 30, 2004 will be reversed. This matter will be remanded to the District Court for further proceedings consistent with this opinion.

---

[8.] In fact, upon smelling the marijuana odor, the officers had an obligation to investigate further to, if nothing else, ensure that the drivers of the vehicles were not impaired. The same would have been true had the officers smelled alcohol.

16