

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2009

# USA v. Perez-Vasquez

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4649

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Perez-Vasquez" (2009). *2009 Decisions.* Paper 2026.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2026

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 07-4649

_____

UNITED STATES OF AMERICA

v.

MARKUS ANTONIO PEREZ-VASQUEZ,
                                   Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cr-00020)
District Judge: Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2009

Before: SLOVITER and BARRY, Circuit Judges, and POLLAK,[*] District Judge

(Filed January 15, 2009)

_____

OPINION
_____

SLOVITER, Circuit Judge.

---

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## I.

Markus Antonio Perez-Vasquez ("Vasquez") appeals from his convictions of (1) possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and (2) possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Although Vasquez waived his right to appeal when he pled guilty, he expressly preserved his appeal on the grounds set forth hereafter.[1]

## II.

Because we write primarily for the parties familiar with the facts and procedural history of this case, we include only those facts necessary for our analysis. Vasquez challenges the drug conviction on the ground that the District Court erred in failing to suppress the evidence from a police search of his vehicle on July 5, 2006. Vasquez had been stopped by Officer Brett Massafra for failure to dim his high beams upon approach of another vehicle. After Massafra checked Vasquez's license and learned it was suspended, he returned to Vasquez's car and smelled the odor of unburned marijuana. Vasquez denied that he had marijuana in the car and invited Massafra to search the car. In the course of that search, Massafra discovered drug paraphernalia and a bag containing marijuana and crack cocaine. Massafra promptly arrested Vasquez. Vasquez waited in

---

[1] This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

his car between five to fifteen minutes while Massafra checked Vasquez's license and registration. The entire stop lasted only about twenty minutes.

Vasquez argues it was not a consensual search but the District Court found otherwise. Vasquez contends that the "apparent consent search" was unconstitutional because the consent resulted from Massafra's unnecessary and unreasonable extension of the duration of the lawful traffic stop.[2] We reject Vasquez's challenge to the July 5 search. A traffic stop, although "lawful at its inception can violate the Fourth Amendment . . . if it is prolonged beyond the time reasonably required to complete [the] mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005) (citing United States v. Jacobsen, 466 U.S. 109, 124 (1984)). The traffic stop was not so dilatory that it became unlawful.

The stop occurred in the dark of the night in a rural area and Massafra was the only officer at the scene. Not only did Massafra have to call the 911 dispatcher to discover that Vasquez was driving with a suspended license, but he also had to wait while the 911 dispatcher called the vehicle's owner to confirm that Vasquez had permission to drive it. Before Massafra could finish explaining to Vasquez both the basis of the citation and the reason he would allow Vasquez to drive despite possessing a suspended license, Massafra smelled the unburned marijuana and was, as the District Court found, "invited" to search the car. App. at 9. The detention at the traffic stop lasted approximately twenty minutes, a reasonable amount of time, considering the circumstances. Moreover, Massafra was

---

[2] We reject without discussion Vasquez's additional challenges to the July 5 search as frivolous.

3

acting within the scope of a single, lawful traffic stop that had not ended when he detected the smell of marijuana.

Because Vasquez invited Massafra to search his vehicle, Massafra did not need a search warrant to do so. See United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003). When Massafra identified the "strong odor of unburned marijuana," App. at 49, coming from inside the vehicle, he was permitted to detain Vasquez and the vehicle for further investigation. The "smell of marijuana alone, if articulable and particularized," constitutes probable cause to search a vehicle. United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006). This more than satisfies the "reasonable suspicion" standard required to "expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." Givan, 320 F.3d at 458; see also United States v. Johns, 469 U.S. 478, 482 (1985). We will therefore affirm Vasquez's drug conviction that stemmed from the July 5, 2006 traffic stop.

Vasquez's firearm conviction stemmed from an incident that occurred on July 13, 2006, when Pennsylvania State Troopers Frederick Gregg and Trooper Spisak were attempting to execute an arrest warrant in a high crime area. When the Troopers approached in their vehicle, Vasquez, who had been talking with another individual, immediately walked about fifty feet away. Once on foot, Gregg initiated "light conversation" with Vasquez, App. at 77, during which Vasquez lied about his name (a fact which Gregg knew from an earlier encounter with Vasquez) and said he was visiting his cousin, "Twiz," who Gregg knew was a local drug dealer. When Gregg asked

4

Vasquez if he could pat him down for weapons, Vasquez reached his hand toward his pocket. Although Gregg explained that Vasquez needed only to lift his shirt to confirm he was not concealing a gun in his waistband, Vasquez stuck his hand into his pocket. This time, Gregg grabbed Vasquez's arm and told him to take his hand out of his pocket. Vasquez attempted to spin away from Gregg, but the two Troopers were able to subdue and handcuff him. While he was being handcuffed, Vasquez stated that he was "going for the dope in [his] pocket," not the gun in his waistband. App. at 84. Vasquez was arrested with a loaded gun, powder cocaine, crack cocaine, and a digital scale.

Vasquez appeals the firearm conviction, arguing that Gregg did not have the reasonable suspicion necessary to conduct a Terry stop and frisk because Gregg knew that Vasquez was not the person for whom the officers were looking, and Gregg had no basis to conclude that Vasquez posed a danger or that any crime was afoot. Under Terry v. Ohio, 392 U.S. 1 (1968), an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). Under the circumstances here, i.e., Vasquez walked away when Gregg approached, then lied about his name and admitted he was seeing a local drug dealer, Gregg had a reasonable suspicion sufficient to justify a Terry stop.

In Minnesota v. Dickerson, the Court stated "'[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a

5

patdown search 'to determine whether the person is in fact carrying a weapon.'" 508 U.S. 366, 373 (1993) (quoting <u>Terry</u>, 392 U.S. at 24). A reasonably prudent officer in Gregg's situation would be concerned for his or her safety. This incident occurred close to midnight in an area notorious for gun-related disturbances. Because the <u>Terry</u> stop and subsequent patdown were justified, there is no basis to overturn the District Court's denial of the motion to suppress.

We also reject Vasquez's claim that his statements were obtained in violation of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). A <u>Miranda</u> warning is only required to be given when a suspect is in custody and subject to interrogation. <u>See</u> <u>Alston v. Redman</u>, 34 F.3d 1237, 1246-47 (3d Cir. 1994) (citing <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980)). Gregg testified that while he was getting Vasquez into custody, Vasquez stated that "he was only grabbing for the dope, not the gun." App. at 85. Vasquez was not under interrogation at that time, and therefore, a <u>Miranda</u> warning was not required. He was advised of his <u>Miranda</u> rights on the ride toward the barracks, but continued to say he was only reaching for the drugs and not the gun. His statements were therefore admissible.

## IV.

For the above reasons, we will affirm Vasquez's convictions.

6